1  **TOSTRUD LAW GROUP, P.C.**
2  1925 Century Park East, Ste. 2100
   Los Angeles, CA. 90067
3  Tel: (310) 278-2600
4  Fax: (310) 278-2640
   Email: jtostrud@tostrudlaw.com
5
6  *Counsel for Plaintiff*

7                    **UNITED STATES DISTRICT COURT**
8                    **CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| FRANCO CASSELLA, DEAN MARCONI, AND JACOBY PLUMMER, Derivatively On Behalf Of FUNKO, INC., | Case No.: |
| Plaintiffs, | **VERFIED DERIVATIVE COMPLAINT** |
| v. | |
| BRIAN MARIOTTI, GINO DELLOMO, MICHAEL LUNSFORD, CHARLES DENSON, ADAM KRIGER, KEN BROTMAN, and DIANE IRVINE, | |
| Defendants, | |
| -and- | |
| FUNKO, INC., | |
| Nominal Defendant. | |

Plaintiff Franco Cassella, Dean Marconi, and Jacoby Plummer ("Plaintiffs"), by and through their undersigned counsel, derivatively on behalf of Nominal Defendant Funko, Inc. ("Funko" or the "Company"), submit this Verified Shareholder Derivative Complaint (the "Complaint"). Plaintiffs' allegations are based upon their personal knowledge as to themselves and their own acts, and upon

30

information and belief, developed from the investigation and analysis by Plaintiffs' counsel, including a review of publicly available information, including filings by Capstone with the U.S. Securities and Exchange Commission ("SEC"), press releases, news reports, analyst reports, investor conference transcripts, publicly available filings in lawsuits, and matters of public record.

## NATURE OF THE ACTION

1. This is a shareholder derivative action brought in the right, and for the benefit, of Funko against certain of its officers and directors seeking to remedy Defendants' breach of fiduciary duties, unjust enrichment and violations of Section 10(b) of the Securities Exchange Act of 1934 that occurred between October 31, 2019 and the present (the "Relevant Period") and have caused substantial harm to Funko.

2. Funko is a pop culture consumer products company that creates figures, plush, accessories, apparel, and homewares regarding movies, TV shows, videogames, musicians, and sports teams.

3. Throughout the Relevant Period, Defendants (defined below) made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to the market that: (i) the Company was experiencing lower than expected sales; (ii) consequently, the Company was reasonably likely to incur a write-down for slower moving inventory; and (iii) as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially false and/or misleading and/or lacked a reasonable basis.

4. On February 5, 2020, after the market closed, the Company issued a press release reporting its preliminary fourth quarter 2019 financial results. Therein, the Company stated that "[n]et sales are expected to be approximately $214 million, a decrease of 8% compared to $233 million in the fourth quarter of 2018." The

1  Company also disclosed a $16.8 million write-down to "dispose of slower moving
2  inventory to increase operational capacity."

3   5. On this news, the Company's stock price fell $6.20 per share, or 40%,
4  to close at $9.29 per share on February 6, 2020, on unusually heavy trading volume.
5  Then, on March 5, 2020, after the market closed, the Company issued a press release
6  announcing its fourth quarter and full year 2019 financial results.  Therein, the
7  Company affirmed that net sales for fourth quarter had decreased 4% year-over-year
8  to $213.6 million due to, among other things, "softness at retail during the holiday
9  season which led to a decrease in orders."

10   6. On this news, the Company's stock price fell $0.32 per share, or over
11 4%, to close at $6.92 per share on March 6, 2020, thereby injuring investors further.

## JURISDICTION AND VENUE

13   7. This Court has jurisdiction over this action pursuant to 28 U.S.C. §
14 1331 in that this Complaint states a federal question: violation of Section 10(b) of
15 the Securities Exchange Act of 1934.  This Court has supplemental jurisdiction over
16 the state law claims asserted herein pursuant to 28 U.S.C. § 1367(a). This action is
17 not a collusive one to confer jurisdiction on a court of the United States which it
18 would not otherwise have.

19   8. Venue is proper in this District as a substantial portion of the
20 transactions and wrongs complained of herein occurred in this District, and the
21 Defendants have received substantial compensation in this District by engaging in
22 numerous activities that had an effect in this District.

## PARTIES

**Plaintiffs**

25   9. *Plaintiff Franco Cassella* ("Plaintiff Cassella") is, and was at relevant
26 times, a shareholder of Funko.  Plaintiff Cassella still retains his Funko shares.

Plaintiff Cassella will fairly and adequately represent the interests of the shareholders in enforcing the rights of the corporation.

10. ***Plaintiff Dean Marconi*** ("Plaintiff Marconi") is, and was at relevant times, a shareholder of Funko. Plaintiff Marconi still retains his Funko shares. Plaintiff Marconi will fairly and adequately represent the interests of the shareholders in enforcing the rights of the corporation.

11. ***Plaintiff Jacoby Plummer*** ("Plaintiff Plummer") is, and was at relevant times, a shareholder of Funko. Plaintiff Plummer still retains his Funko shares. Plaintiff Plummer will fairly and adequately represent the interests of the shareholders in enforcing the rights of the corporation.

**Nominal Defendant**

12. Nominal Defendant Funko is incorporated under the laws of Delaware with its principal executive offices located in Everett, Washington.

**Director Defendants**

13. ***Defendant Gino Dellomo*** ("Dellomo") has served on the Board of Directors ("Board") of the Company since its formation in April 2017, and on the board of directors of FAH, LLC ("FAH") since October 2015. Defendant Dellomo is also a director at ACON Investments ("ACON")

14. ***Defendant Michael Lunsford*** ("Lundford") has served on the Board since October 2018. Defendant Lunsford is a member of the Audit Committee.

15. ***Defendant Charles Denson*** ("Denson") has served on the Board since its formation in April 2017, and on the board of directors of FAH since June 2016. Defendant Denson is a member of the Audit Committee.

16. ***Defendant Adam Kriger*** ("Kriger") has served on the Board since its formation in April 2017, and on the board of directors of FAH since June 2016. Defendant Kriger is also an Executive Partner at ACON.

17. ***Defendant Brian Mariotti*** ("Mariotti") has served as the Company's Chief Executive Officer ("CEO") and as a member of the Board since its formation

in April 2017, as the Chief Executive Officer of FAH and as a member of FAH's board of directors since October 2015.

18. ***Defendant Ken Brotman*** ("Brotman") has served on the Board since its formation in April 2017, and on the board of directors of FAH since October 2015. Brotman is a Founder and Managing Partner at ACON, which he co-founded in 1996.

19. ***Defendant Diane Irvine*** ("Irvine") has served on the Board and the board of directors of FAH since August 2017. Defendant Irvine is the Chairperson of the Audit Committee.

20. Defendants Dellomo, Lundford, Denson, Kriger, Mariotti, Brotman, and Irvine are collectively herein referred to as the "Board Defendants."

**Non-Party**

21. ***Non-Party Sarah Kirshbaum Levy*** ("Levy") has served on the board of directors of Funko, Inc. since August 2019.

## AUDIT COMMITTEE CHARTER

22. The Company's Audit Committee Charter states in relevant part:

**I.   Purpose**

The purpose of the Audit Committee (the "Committee") is to oversee the accounting and financial reporting processes of the Company and the audits of the financial statements of the Company.

The Committee's responsibilities are limited to oversight. The Company's management is responsible for establishing and maintaining accounting policies and procedures in accordance with generally accepted accounting principles ("GAAP") and other applicable reporting and disclosure standards and for preparing the Company's financial statements. The Company's independent auditors are responsible for auditing and reviewing those financial statements.

\*   \*   \*

**IV.   Duties and Responsibilities**

30

*Interaction with the Independent Auditor*

1. *Appointment and Oversight*. The Committee is directly responsible for the appointment, compensation, retention and oversight of the work of the independent auditor (including resolution of any disagreements between Company management and the independent auditor regarding financial reporting) and any other registered public accounting firm engaged for the purpose of preparing or issuing an audit report or related work or performing other audit, review or attest services for the Company, and the independent auditor and each such other registered public accounting firm must report directly to the Committee. The Committee, or the Chair of the Committee, must pre-approve any audit and non-audit service provided to the Company by the independent auditor, unless the engagement is entered into pursuant to appropriate preapproval policies established by the Committee or if such service falls within available exceptions under SEC rules.

2. *Annual Report on Independence*. The Committee must ensure that the independent auditor prepares and delivers, at least annually, a written statement delineating all relationships between the independent auditor and the Company, must actively engage in a dialogue with the independent auditor with respect to any disclosed relationships or services that, in the view of the Committee, may impact the objectivity and independence of the independent auditor, and, if the Committee determines that further inquiry is advisable, must take appropriate action in response to the independent auditor's report to satisfy itself of the auditor's independence.

*Annual Financial Statements and Annual Audit*

3. *Audit Problems*. The Committee must discuss with the independent auditor any audit problems or difficulties and management's response.

4. *Form 10-K Review*. The Committee must review and discuss the annual audited financial statements with management and the independent auditor, including the Company's disclosures under "Management's Discussion and Analysis of Financial Condition and Results of Operations."

5. *Audit Committee Report*. The Committee must provide the Company with the report of the Committee with respect to the audited financial statements for inclusion in each of the Company's annual proxy statements.

Quarterly Financial Statements

6. Form 10-Q Review. The Committee must review and discuss the quarterly financial statements with management and the independent auditor, including the Company's disclosures under "Management's Discussion and Analysis of Financial Condition and Results of Operations."

*Other Duties and Responsibilities*

7. *Review of Earnings Releases*. The Committee should discuss the Company's earnings press releases, as well as financial information and earnings guidance provided to analysts and rating agencies.

8. *Risk Assessment and Risk Management*. The Committee must discuss the Company's policies with respect to risk assessment and risk management.

9. *Review of Related Person Transactions*. The Committee must review all related person transactions as defined by Item 404 of Regulation S-K on an ongoing basis and all such transactions must be approved or ratified by the Committee.

10. *Review of Code of Ethics*. The Committee must periodically consider and discuss with management and the independent auditor the Company's code of ethics and the procedures in place to enforce the code of ethics. The Committee must also consider and discuss and, as appropriate, grant requested waivers from the code of ethics brought to the attention of the Committee, though the Committee may defer any decision with respect to any waiver to the Board.

11. *Hiring of Independent Auditor Employees*. The Committee must set clear hiring policies for employees or former employees of the Company's independent auditor.

12. *Complaint Procedures*. The Committee must establish procedures for the receipt, retention and treatment of complaints received by the Company regarding accounting, internal accounting controls or auditing matters, and for the confidential and anonymous submission by Company employees of concerns regarding questionable accounting or auditing matters.

13. *Reports to the Board of Directors*. The Committee must report regularly to the Board regarding the activities of the Committee.

14. *Committee Self-Evaluation*. The Committee must periodically perform an evaluation of the performance of the Committee.

15. *Review of this Charter*. The Committee must annually review and reassess this Charter and submit any recommended changes to the Board for its consideration

## BACKGROUND

23. Funko is a pop culture consumer products company that creates figures, plush, accessories, apparel, and homewares regarding movies, TV shows, videogames, musicians, and sports teams.

## MATERIALLY FALSE AND MISLEADING
## STATEMENTS ISSUED DURING THE CLASS PERIOD

24. On October 31, 2019, Funko announced its third quarter 2019 financial results and reiterated its fiscal 2019 outlook. In a press release, the Company stated in relevant part:

Third Quarter 2019 Highlights

- Net sales increased 26% to $223.3 million
- Gross profit[] increased 26% to $85.5 million
- Gross margin[] decreased 10 basis points to 38.3%
- Income from operations increased 36% to $22.6 million
- Net income increased to $15.5 million from $7.6 million
- Earnings per diluted share increased to $0.25
- Adjusted Net Income[] was $19.9 million compared to $13.6 million in the third quarter of 2018, and Adjusted Earnings per Diluted Share[] was $0.38, compared to $0.27 in the third quarter of 2018

30

•         Adjusted EBITDA[] increased 20% to $40.6 million

* * *

**2019 Outlook**

The Company is reiterating its outlook for the full year 2019. The Company expects net sales to be in a range of $840 million to $850 million. Adjusted EBITDA[] is expected to be in a range of $140 million to $145 million. Adjusted Earnings per Diluted Share[] is expected to be in a range of $1.15 per share to $1.22 per share and is based on estimated adjusted average diluted shares outstanding of 53.5 million for the full year 2019

25.     The same day, the Company filed its quarterly report on Form 10-Q with the SEC for the period ended September 30, 2019, affirming the previously reported financial results. Regarding inventory levels, the report stated in relevant part:

> Our success depends, in part, on our ability to successfully manage our inventories. We must maintain sufficient inventory levels to operate our business successfully, but we must also avoid accumulating excess inventory, which increases working capital needs and lowers gross margin. We obtain substantially all of our inventory from third-party manufacturers located outside the United States and must typically order products well in advance of the time these products will be offered for sale to our customers. As a result, it may be difficult to respond to changes in consumer preferences and market conditions, which, for pop culture products, can change rapidly. If we do not accurately anticipate the popularity of certain products, then we may not have sufficient inventory to meet demand. Alternatively, if demand or future sales do not reach forecasted levels, we could have excess inventory that we may need to hold for a long period of time, write down, sell at prices lower than expected or discard. If we are not successful in managing our inventory, our business, financial condition and results of operations could be adversely affected.
>
> We may also be negatively affected by changes in retailers' inventory policies and practices. As a result of the desire of retailers to more closely manage inventory levels, there is a growing trend to make purchases on a "just-intime" basis. This requires us to more closely

30

anticipate demand and could require us to carry additional inventory. Policies and practices of individual retailers may adversely affect us as well, including those relating to access to and time on shelf space, price demands, payment terms and favoring the products of our competitors. Our retail customers make no binding long-term commitments to us regarding purchase volumes and make all purchases by delivering purchase orders. Any retailer can therefore freely reduce its overall purchase of our products, including the number and variety of our products that it carries, and reduce the shelf space allotted for our products. If demand or future sales do not reach forecasted levels, we could have excess inventory that we may need to hold for a long period of time, write down, sell at prices lower than expected or discard. If we are not successful in managing our inventory, our business, financial condition and results of operations could be adversely affected.

26. The above statements identified in ¶¶ 24-25 were materially false and/or misleading and failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose to investors that: (i) the Company was experiencing lower than expected sales; (ii) consequently, the Company was reasonably likely to incur a write-down for slower moving inventory; and (iii) as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially false and/or misleading and/or lacked a reasonable basis.

## **THE TRUTH EMERGES**

27. On February 5, 2020, the Company issued a press release announcing preliminary fourth quarter 2019 financial results. Therein, the Company stated that "[n]et sales are expected to be approximately $214 million, a decrease of 8% compared to $233 million in the fourth quarter of 2018." The Company also disclosed a $16.8 million write-down to "dispose of slower moving inventory to increase operational capacity." The press release stated in relevant part:

> Net sales are expected to be approximately $214 million, a decrease of 8% compared to $233 million in the fourth quarter of 2018. Net sales were below expectations in mature markets, including the U.S., due to

30

the challenging retail environment, which resulted in lower than expected purchases among Funko's top customers throughout the holiday season as well as softness in sales related to certain tentpole movie releases. These factors more than offset strong growth both in Europe and the Loungefly brand during the quarter.

For the fourth quarter of fiscal 2019, Funko estimates:

- Net sales in the U.S. will decrease approximately 9%, while net sales internationally will decrease approximately 8%, reflecting declines in mature international markets, including Australia and Canada, partially offset by continued double digit growth in Europe.

- On a product category basis, net sales of figures will decrease approximately 10% and net sales of other products will decrease approximately 3% versus the year ago period, respectively. Net sales of Loungefly items, included in other products, are expected to show continued double-digit growth in the fourth quarter offset by declines in other branded products.

- The Company will incur a one-time $16.8 million charge related to the write-down of inventory as a result of the Company's decision to dispose of slower moving inventory to increase operational capacity. This charge is incremental to normal course reserves and will have an unfavorable impact to gross profit[], gross margin[], net loss and net loss per diluted share in the fourth quarter.

- Gross profit[] will be in the range of $62.3 million to $62.8 million, while gross margin1 will be 29.2% to 29.4%. Gross margin excluding the one-time inventory write-down[] will be 37.0% to 37.3%.

- The Company will have a net loss in the range of $6.7 million to $6.0 million and net loss per diluted share of $0.12 to $0.11.

- Adjusted EBITDA[] will be in the range of $24.7 million to $25.7 million.

- Adjusted Net Income[] will be in the range of $8.1 million to $8.9 million and Adjusted Earnings per Diluted Share[] will be in the range of $0.16 to $0.18.

"While we are disappointed in our fourth quarter results, we are confident that our strong track record of innovation through new product categories and properties, as well as continued international expansion, will continue to propel the Company in 2020 and beyond. The underlying strength of our Pop! and Loungefly brands, combined with Funko's unique ability to leverage evergreen properties will enable the Company to achieve high-single-digit to low-double-digit sales growth in 2020," stated Brian Mariotti, Chief Executive Officer.

28. Moreover, the Company expected that sales trends would not improve until second half of fiscal 2020, stating in the same press release:

The Company expects its 2020 net sales growth rate to be in the high-single digits to low-double-digits. Additionally, the Company anticipates that top line trends will improve gradually throughout 2020 and will be largely weighted toward the second half of the year, with net sales in the first half expected to be down low-single-digits to flat compared to the first half of 2019. Funko plans to provide expanded guidance for 2020 in connection with the release of fourth quarter and full year 2019 financial results on March 5, 2020.

29. On this news, the Company's stock price fell $6.20 per share, or 40%, to close at $9.29 per share on February 6, 2020, on unusually heavy trading volume.

30. Then, on March 5, 2020, after the market closed, the Company issued a press release announcing its fourth quarter and full year 2019 financial results. Therein, the Company affirmed that net sales for fourth quarter had decreased 4% year-over-year to $213.6 million due to, among other things, "softness at retail during the holiday season which led to a decrease in orders."

31. On this news, the Company's stock price fell $0.32 per share, or over 4%, to close at $6.92 on March 6, 2020.

**DERIVATIVE AND DEMAND FUTILITY ALLEGATIONS**

30

32. Plaintiffs bring this action derivatively in the right and for the benefit of the Company to redress injuries suffered and to be suffered as a direct and proximate result of the breaches of fiduciary duties and gross mismanagement by the Director Defendants.

33. Plaintiffs will adequately and fairly represent the interests of the Company in enforcing and prosecuting its rights and retained counsel competent and experienced in derivative litigation.

34. Plaintiffs are current owners of the Company stock and have continuously been an owners of Company stock during all times relevant to the Director Defendants' wrongful course of conduct alleged herein.  Plaintiffs understand their obligation to hold stock throughout the duration of this action and are prepared to do so.

35. During the illegal and wrongful course of conduct at the Company and through the present, the Board consisted of the Director Defendants.  Because of the facts set forth throughout this Complaint, demand on the Company Board to institute this action is not necessary because such a demand would have been a futile and useless act.

36. The Director Defendants either knew or should have known of the false and misleading statements that were issued on the Company's behalf and took no steps in a good faith effort to prevent or remedy that situation.

37. The Director Defendants (or at the very least a majority of them) cannot exercise independent objective judgment about whether to bring this action or whether to vigorously prosecute this action.  For the reasons that follow, and for reasons detailed elsewhere in this complaint, Plaintiffs have not made (and should be excused from making) a pre-filing demand on the Board to initiate this action because making a demand would be a futile and useless act.

38. Each of the Director Defendants approved and/or permitted the wrongs alleged herein to have occurred and participated in efforts to conceal or disguise

those wrongs from the Company's stockholders or recklessly and/or with gross negligence disregarded the wrongs complained of herein and are therefore not disinterested parties.

39. Each of the Director Defendants authorized and/or permitted the false statements to be disseminated directly to the public and made available and distributed to shareholders, authorized and/or permitted the issuance of various false and misleading statements, and are principal beneficiaries of the wrongdoing alleged herein, and thus, could not fairly and fully prosecute such a suit even if they instituted it.

40. Additionally, each of the Director Defendants received payments, benefits, stock options, and other emoluments by virtue of their membership on the Board and their control of the Company.

**Defendant Mariotti**

41. The principal professional occupation of Defendant Mariotti is his employment with the Company as its CEO, pursuant to which he has received and continues to receive substantial monetary compensation and other benefits. Additionally, Defendant Mariotti is a named defendant in the securities class action entitled *Nahas v. Funko, Inc., et al.*, Case 2:20-cv-03130 (C.D. Cal.) (the "Securities Class Action").

**Defendants Irvine, Denson and Lunsford**

42. Demand is excused because Defendants Irvine, Denson and Lunsford face a substantial likelihood of liability for their misconduct.

43. During the Relevant Period, Defendants Irvine, Denson and Lunsford served as members of the Audit Committee. Pursuant to the Company's Audit Committee Charter, the members of the Audit Committee are responsible for, *inter alia*, reviewing the Company's financial statements, press releases, and assuring the adequacy and effectiveness of disclosure controls, ensure ethical compliance, and otherwise meet their responsibilities as set forth in the Audit Committee Charter.

44. Defendants Irvine, Denson and Lunsford breached their fiduciary duties of due care, loyalty, and good faith, because the Audit Committee, *inter alia*, allowed or permitted false and misleading statements to be disseminated in the Company's SEC filings and other disclosures and, otherwise, failed to ensure that adequate internal controls were in place regarding the serious business reporting issues and deficiencies described above. Therefore, Defendants Irvine, Denson and Lunsford face a substantial likelihood of liability for their breach of fiduciary duties and any demand upon them is futile.

**Defendants Dellomo, Denson, Kriger, Mariotti, Brotman and Irvine**

45. Defendants Dellomo, Denson, Kriger, Mariotti, Brotman and Irvine serve on the board of directors of FAH.

46. When evaluating director independence, personal relationships matter.

47. Defendants Dellomo, Denson, Kriger, Mariotti, Brotman and Irvine have entangling relationships with other companies (*i.e.*, FAH).

48. FAH, a holding company with no operating assets or operations, was formed on September 24, 2015. On October 30, 2015, ACON Funko Investors, L.L.C., through FAH and the ACON Acquisition, acquired a controlling interest in FHL, which is also a holding company with no operating assets or operations. FAH owns 100% of FHL and FHL owns 100% of Funko, LLC, which is the operating entity.

**Defendants Dellomo, Kriger and Brotman**

49. Defendants Dellomo, Kriger and Brotman are all high-level executive officers or directors of ACON.

50. ACON has significant influence over the Company, including over decisions that require the approval of stockholders, and its interests, along with the interests of the Company's other Continuing Equity Owners, in the Company business may conflict with the interests of the Company's other stockholders. Each share of our Class A common stock and Class B common stock entitles its holders to

30

one vote per share on all matters presented to our stockholders. As of March 3, 2020, ACON holds approximately 40.1% of the combined voting power of the Company's common stock through its ownership of 10,934,606 shares of our Class A common stock and 8,882,120 shares of our Class B common stock. Accordingly, ACON will have significant influence over substantially all transactions and other matters submitted to a vote of the Company stockholders, such as a merger, consolidation, dissolution or sale of all or substantially all of the Company assets, the issuance or redemption of certain additional equity interests, and the election of directors. This influence may increase the likelihood that the Company will consummate transactions that are not in the best interests of holders of the Company's Class A common stock or, conversely, prevent the consummation of transactions that are in the best interests of holders of the Company's Class A common stock.

51. Brotman, Dellomo, Kriger and Brotman are employees of ACON, affiliates of which own approximately 40.1% of the Company's combined voting power as of April 3, 2020.

**FIRST CAUSE OF ACTION**

**<u>Against Defendants for Breach of Fiduciary Duties</u>**

52. Plaintiffs incorporate by reference and re-allege each and every allegation contained above, as though fully set forth herein.

53. Defendants owe the Company fiduciary obligations. By reason of their fiduciary relationships, Defendants owed and owe the Company the highest obligation of good faith, fair dealing, loyalty, and due care.

54. Defendants violated and breached their fiduciary duties of care, loyalty, reasonable inquiry, and good faith.

55. Defendants engaged in a sustained and systematic failure to properly exercise their fiduciary duties. Defendants breached their fiduciary duties by knowingly causing and/or recklessly allowing the Company to make false and misleading statements regarding Funko.

56. As a direct and proximate result of Defendants' failure to perform their fiduciary obligations, the Company has sustained significant damages. As a result of the misconduct alleged herein, Defendants are liable to the Company.

57. As a direct and proximate result of Defendants' breach of their fiduciary duties, the Company has suffered damage, not only monetarily, but also to its corporate image and goodwill. Such damage includes, among other things, costs associated with defending securities lawsuits, severe damage to the share price of the Company, resulting in an increased cost of capital, the waste of corporate assets, and reputational harm.

## SECOND CAUSE OF ACTION

### Against Defendants for Unjust Enrichment

58. Plaintiffs incorporate by reference and re-allege each and every allegation set forth above, as though fully set forth herein

59. By their wrongful acts and the omissions of material fact that they caused to be made, Defendants were unjustly enriched at the expense of, and to the detriment of, the Company.

60. During the Relevant Period, Defendants either received bonuses, stock options, or similar compensation from the Company that was tied to the financial performance or artificially inflated valuation of the Company or received compensation that was unjust in light of Defendants' bad faith conduct.

61. Plaintiffs, shareholders and representatives of the Company, seek restitution from Defendants and seeks an order from this Court disgorging all profits, benefits, and other compensation, including any performance-based or valuation-based compensation, obtained by Defendants due to their wrongful conduct and breach of their fiduciary duties.

## THIRD CAUSE OF ACTION

### Derivative Claim for Violations of Section 10(b) of the Exchange Act and SEC Rule 10b-5 Promulgated Thereunder Against the Individual Defendants

30

62. Plaintiffs incorporate by reference and realleges each and every allegation contained above, as though fully set forth herein.

63. This Count is asserted on behalf of the Company against Defendants for violations of Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b) and Rule 10b-5 promulgated thereunder, 17 C.F.R. § 240.10b-5.

64. Defendants, directly and indirectly, by the use of means or instrumentalities of interstate commerce and/or of the U.S. mails, engaged and participated in a continuous course of conduct that operated as a fraud and deceit upon the Company; made or disseminated various false and/or misleading statements of material facts and omitted to state material facts necessary in order to make the statements made or disseminated, in light of the circumstances under which they were made or disseminated, not misleading; made or disseminated the above statements intentionally or with a deliberately reckless disregard for the truth; and employed devices and artifices to defraud in connection with the misleading disclosures, which were intended to, and did deceive the Company: (i) the Company was experiencing lower than expected sales; (ii) consequently, the Company was reasonably likely to incur a write-down for slower moving inventory; and (iii) as a result of the foregoing, Defendants' positive statements about the Company's business, operations, and prospects were materially false and/or misleading and/or lacked a reasonable basis.

65. Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 in that they (a) employed devices, schemes, and artifices to defraud; (b) made untrue statements of material facts or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and/or (c) engaged in acts, practices, and a course of business that operated as a fraud or deceit upon the Company in connection with the misleading disclosures.

1  66. As alleged herein, Defendants acted with scienter in that they knew that the public documents and statements issued or disseminated in the name of the Company were materially false and misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, Defendants, by virtue of their receipt of information reflecting the true facts regarding Funko, their control over, and/or receipt and/or modification of Funko's allegedly materially misleading statements and/or their associations with the Company which made them privy to confidential proprietary information concerning Funko, participated in the fraudulent scheme alleged herein.

67. As a result of Defendants' misconduct, Funko the Company is suffering litigation expense and reputational harm in the marketplace in violation of section 10(b) of the Exchange Act and SEC Rule 10b-5.

## **REQUEST FOR RELIEF**

**WHEREFORE**, Plaintiffs demand judgment as follows:

A. Determining that this action is a proper derivative action maintainable under law, and that demand is excused;

B. Awarding, against all Defendants and in favor of the Company, the damages sustained by the Company as a result of Defendants' breaches of their fiduciary duties;

C. Directing the Company to take all necessary actions to reform and improve its corporate governance and internal procedures, to comply with the Company's existing governance obligations and all applicable laws and to protect the Company and its investors from a recurrence of the damaging events described herein;

1  D. Awarding to Plaintiffs the costs and disbursements of the action, including reasonable attorneys' fees, accountants' and experts' fees, costs, and expenses; and

E. Granting such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiffs demand a trial by jury.

Dated: April 23, 2020

**TOSTRUD LAW GROUP, P.C.**

By: */s/ Jon Tostrud*
　　Jon Tostrud
1925 Century Park East, Ste. 2100
Los Angeles, CA. 90067
Tel: (310) 278-2600
Fax: (310) 278-2640
Email: jtostrud@tostrudlaw.com

**GAINEY McKENNA & EGLESTON**
Thomas J. McKenna
tjmckenna@gme-law.com
501 Fifth Avenue, 19th Floor
New York, NY 10017
Tel:　(212) 983-1300
Fax:　(212) 983-0383

*Counsel for Plaintiffs*

30